## NATIONAL LABOR RELATIONS BOARD v. PREMO PHARMACEUTICAL LABORATORIES, Inc.

### No. 197.

Circuit Court of Appeals, Second Circuit.

June 8, 1943.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and Joseph B. Robison, all of Washington, D. C., and Eugene J. Davidson, of New York City, for petitioner.

Hirson & Bertini, of New York City (Max L. Rothenberg, of New York City, of counsel), for respondent.

Buitenkant & Cohen, of New York City (Arnold Cohen, of New York City, of counsel), for intervener Federal Labor Union, Local 20734.

SWAN, Circuit Judge.

The order before us for review directed the respondent to cease and desist from giving effect to a closed-shop agreement, dated September 12, 1941, between the respondent and the intervener, Federal Labor Union, Local 20734, A. F. of L., for brevity hereafter referred to as Federal. The proviso to section 8(3) of the National Labor Relations Act, 29 U.S.C.A. § 158(3), recognizes that a closed-shop agreement with a labor union is valid if the union was not "established, maintained, or assisted by any action defined * * * as an unfair labor practice" and if the union was the collective

bargaining representative of the employees when the agreement was made. The Board concluded that neither of these conditions was met in the case at bar. It made findings that Federal did not represent a majority of the employees on September 12, 1941 and that the company had unlawfully intervened to assist it. Consequently it held the agreement invalid and directed that it be abrogated. If these findings can stand, the order in this respect was plainly right. National Labor Relations Board v. Electric Vacuum Cleaner Co., 315 U.S. 685, 693, 62 S.Ct. 846, 86 L.Ed. 1120; International Ass'n of Machinists v. National Labor Relations Board, 311 U.S. 72, 75, 61 S.Ct. 83, 85 L.Ed. 50; Corning Glass Works v. National Labor Relations Board, 2 Cir., 118 F.2d 625, 629. The discharge of Olshansky because his membership in Federal had been suspended was clearly discriminatory if the closed-shop agreement was invalid; and the remaining provisions of the order on review would follow as of course.

■ It is urged the Board's findings are not supported by substantial evidence. Only a few of the facts appearing in the record need be stated to demonstrate the unsoundness of this contention. The respondent had about 120 employees. Federal produced at the hearing 102 signed membership application cards, but 91 of them were dated after September 12, 1941. Oneto, a Federal organizer, claimed that a majority of the employees had orally adhered to Federal before that date but he could name none of them, and the Board did not credit his testimony. When it is recalled that the company, at Oneto's request, caused application blanks to be circulated among its employees on September 11 and that not more than 11 were signed until after the closed-shop agreement was executed, it was certainly a permissible inference—to put it no more strongly—that Federal had not previously obtained authorizations from a majority of the employees to be their collective bargaining representative. The Board's finding that the respondent assisted Federal by action defined as an unfair labor practice is supported by the uncontradicted testimony regarding the company's circulation of application cards for Federal on September 11th.

■■ One further matter remains for discussion. Both the respondent and Federal

contend that they were denied a fair hearing by the trial examiner's refusal to receive evidence. When the case for the Board was nearing its close, counsel for Federal asked the trial examiner whether "you will allow me to produce all the employees, one at a time, to testify that they wanted the A. F. of L. prior to September 11." The examiner stated that he did not think such testimony would be pertinent or admissible. If the question be taken literally the answer was correct. Testimony by an employee that he "wanted" Federal at a given date would be wholly irrelevant, unless he had expressed his desire in such a way as to become a member of the union. It may be conceded that joining a union may be done informally and without a writing, but enough must be expressed to constitute some act of association, some commitment which goes beyond a mere expression of benevolent feeling toward the union. Very likely counsel meant that he would offer evidence of informal membership although literally he did not say so. The colloquy went on at some length and became somewhat acrimonious. Counsel stated that he was not going to proceed except to offer proof by "word of mouth of the people, and when I get through with that, with such concrete evidence as I have." The examiner directed him to produce Federal's records. The colloquy ended with counsel's statement, "All right. So that it would be needless for me to bring in any individuals along that line." To which the examiner replied, "Definitely." But on the following day when the Board rested its case the examiner stated: "I may say that I will insist upon the documentary evidence of the representation by the union of these employees if such evidence exists, and I will not care to hear from any of the individuals upon the matter of such representation until that source has been completely exhausted. After it has been exhausted then I will hear an offer of proof, if you have any to make, on the subject, and it will have to be in considerable detail."

This was his final ruling and it was a proper ruling. The direction of the order of proof was a reasonable exercise of discretion. An opportunity thereafter to offer oral testimony was granted but was never availed of by counsel. Hence there was no improper exclusion of evidence. The usual order of enforcement may be entered.